FRAYER TYNER v. UNITED STATES.

No. 819, Ind. T.   Opinion Filed September 21, 1909.

(103 Pac. 1057.)

1.    HOMICIDE—Assault to Kill—Elements.   To sustain a charge of
      assault with intent to kill under section 4352, Ind. T. Ann. St.
      1899, it is not necessary to prove the elements of murder, but it
      is sustained if the defendant would have been guilty of any
      degree of homicide had death ensued.

2.    ASSAULT AND BATTERY—Reckless Discharge of Weapon—In-
      tent—Presumption.   Where one recklessly fires a pistol with
      criminal indifference as to the consequences and another is
      wounded, the person firing will be guilty of assault, though the
      weapon was pointed in the range of the injured person by acci-
      dent and with no intention or design to inflict an injury.   The
      law presumes that a party intends the probable and natural
      effect of his deliberate act.

3.    EVIDENCE—Voluntary Statements by Accused—Arrest—Duress.
      Voluntary statements made by a person under arrest, without
      duress or inducement, may properly be used against him on the
      trial of the offense for which he is under arrest.

      (Syllabus by the Court.)

*Error from the United States Court for the Northern District of
      the Indian Territory; Joseph A. Gill, Judge.*

· Frayser Tyner was convicted of assault with intent to kill,
and he brings error.   Affirmed.

The plaintiff in error was tried and convicted in the United
States court in the Northern district of the Indian Territory,
at Claremore, on the 28th day of November, 1906, on indictment
charging him with assault with intent to kill Harvey King, his
punishment fixed by the jury at imprisonment at hard labor for
one year.   From that judgment he appealed to the United States
Court of Appeals at South McAlester.   On the admission of this
state into the Union the case was transferred to the Supreme
Court, and from that court to this when this court was organized.

2 Cr.—44

*James S. Davenport* and *William M. Hall,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for the United States.

No copies of briefs reached the reporter.

OWEN, JUDGE. (after stating the facts as above). The plaintiff in error, hereinafter referred to as the. defendant, assigns 21 errors committed by the trial court. Counsel in their brief filed in this case consolidate these assignments, and argue them under seven general assignments.

First, it is contended that the court erred in refusing to give instruction No. 1, requested by the defendant, as follows:

"The court instructs you that, before you will be warranted in finding the defendant guilty, the government must prove to your minds beyond a reasonable doubt sufficient facts to constitute the crime of murder had death ensued from the assault alleged to have been committed by the defendant on Harvey King."

This prosecution was under section 2142, Rev. St. U. S., in force in the Indian Territory at the time this case was tried (section 4352, Ind. T. Ann. St. 1899), which is as follows:

"Every white person who shall make an assault upon an Indian, or other person, and every Indian who shall make an assault upon a white person within the Indian country, with a gun, rifle, sword, pistol, knife, or any other deadly weapon, with intent to kill or maim the person so assaulted, shall be punishable by imprisonment, at hard labor, for not more than five years, nor less than one year."

There is no contention on the part of the defendant that any other section of the statute governed in the trial of this case.

Counsel rely on the case of *Lacefield v. State,* 34 Ark. 275, 36 Am. Rep. 8, and *Felker v. State,* 54 Ark. 489, 16 S. W. 663. These cases are not in point. The court in these cases properly held that, in order to warrant a conviction under the indictments charging assault with intent to murder, there must have been sufficient evidence to prove all the elements necessary to constitute the crime of murder if death had ensued.

The statute under which the indictments in those cases were returned is as follows:

"Whoever shall, feloniously, wilfully and with malice aforethought, assault any person with intent to murder or kill ＊ ＊ ＊ shall, on conviction thereof, be imprisoned in the penitentiary not less than three nor more than twenty-one years."

The difference between these two statutes is a very material one. The statute under which the prosecution in this case was had uses the words, "every person who shall make an assault with intent to *kill* the person so assaulted." The statute in Arkansas uses the words, "whoever feloniously, wilfully, and with malice aforethought assault any person with intent to *murder* or kill." Under the statute in question here it was only necessary that the defendant would have been guilty of some degree of homicide, either murder or manslaughter, had death ensued, and it was not necessary to prove all of the elements of murder.

The second reason urged is that the court erred in refusing to give the third instruction, as requested by the defendant, which was as follows:

"You are instructed that unless you believe from the evidence that the defendant, Frayser Tyner, shot at Harvey King with the wilful and malicious intent to kill or maim the said Harvey King, proof that the defendant fired shots in a malevolent and reckless manner would not be sufficient to warrant you in finding the defendant guilty of assault with intent to kill or maim Harvey King, even though it be shown by the evidence that one of the shots struck the body of Harvey King and inflicted a serious wound on him; the essence of the crime as alleged in the indictment being the felonious, malicious, and wilful intent. And, if you should find from the evidence that the said defendant did not assault the said Harvey King, as alleged in the indictment, you should acquit the defendant."

The court properly refused to give this instruction. It is to the effect that the jury must not only find from the facts all of the elements necessary to constitute murder, but must in addition thereto find that the defendant had the specific intent to murder Harvey King. Neither proposition is sound.

The rule is well settled that, to constitute manslaughter, it is not necessary that the perpetrator should have intended and willed the death of the person killed. One who wilfully uses a deadly weapon upon another will be deemed to intend the necessary and probable consequences of his act.

The text-writers divide manslaughter into two degrees—voluntary and involuntary.

Voluntary manslaughter is the unlawful killing of another without malice in the heat of passion.

Involuntary manslaughter is where one doing an unlawful act, not felonious or tending to great bodily harm, or doing a lawful act without proper caution or requisite skill, undesignedly kills another. According to the common-law writers, it is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part not amounting to felony or from a lawful act negligently performed. At common law it included all those homicides which were below the grade of murder, and were neither justifiable nor excusable, and which were the accidental result of some unlawful act less than felony, not aimed or directed against the person slain. A definition which seems to have been universally adopted is: "An unintentional killing in the commission of an unlawful act." Wharton on Homicide (3d Ed.) p. 6; Wharton, Cr. Law, p. 305; Anderson's Law Dict.; *Siberry v. State,* 149 Ind. 684, 39 N. E. 936; *Commonwealth v. Mink,* 123 Mass. 422, 25 Am. Rep. 109; *Jewell v. Territory,* 4 Okla. 53, 43 Pac. 1075; *McManus v. State,* 36 Ala. 285.

The undisputed proof in this case was that some person passing along the public highway fired a pistol or gun three or four times, and that one of the shots struck Harvey King, a boy about 11 years of age, who was walking across his father's yard on his way to the barn. The defendant about the time that the shooting took place passed along the road by the place where the boy was shot. The defendant stated to several witnesses that he fired three shots, but denied that he had fired in the direction of

the boy. The jury evidently believed that he was the man who fired the shots. If one fires a gun recklessly or heedlessly, he will not be excused; and his offense will be at least manslaughter, though the weapon was pointed in range of the deceased by accident, with no intention or design of killing the deceased. If the act is attended with probable mortally dangerous consequences to ·the deceased or persons generally, and death should ensue, the crime is murder or manslaughter, depending upon the . degree of deliberation. The law always presumes . that a party intended the probable and natural effect of his deliberate act.

The above rule was announced in the case of *State v. Vance,* 17 Iowa, 138, and the same is held to be the rule in the case of *York v. Commonwealth,* 82 Ky. 360. To the same effect, is the case of *Adams v. State,* 65 Ind. 565, and *State v. Capps,* 134 .N. C. 622, 46 S. E. 730, as also· the case of *Pool v. State,* 87 Ga. 530, 13 S. E. 556, and many other cases too numerous to mention. In the last named case, *Pool v. State,* the court says:

"The law infers guilty intention from reckless conduct; and, where the recklessness is of such a character as to justify this inference, it is the same as if the defendant had deliberately intended the act committed. When, therefore, one recklessly fires a pistol with criminal indifference as to the consequences, and another is killed, it is not necessary, in order to constitute this killing murder, that the accused should at the time of firing have been engaged in the commission of some unlawful act, independent of and in addition to the reckless firing itself."

If death had ensued here, this defendant would have been guilty of manslaughter, and this makes him guilty of assault with intent to kill since death did not ensue.

It is urged that the trial court erred in this case because the jury was instructed that included in the indictment was the offense of aggravated assault, or assault with a deadly weapon. We are unable to understand how the defendant could possibly be injured by instructing as to a smaller offense than the one on which he was convicted. As a general rule· the graver offense includes the smaller. In this case the jury evidently believed the

defendant guilty of the graver offense, and to say that they might, under the instructions, have convicted the defendant of a smaller offense, certainly does the defendant no injury. This would be an error, if error at all, in the defendant's favor, of which he cannot complain.

The fourth reason urged is that the court erred in instructing the jury as follows:

"In its broad legal sense any unlawful attempt, coupled with the present ability to commit a violent injury upon the person of another, is an assault. I will repeat that because that comprises the definition generally of all assaults. In its broad legal sense any unlawful attempt, coupled with the present ability to commit a violent injury upon the person of another, is an assault."

Counsel for defendant urge that this definition was misleading to the jury, and did not give the proper definition of intent to kill or elements necessary to make up this assault with intent to kill, and that any instruction by the court upon any kind of assault was an error, and calculated to mislead the jury. Counsel failed to point out in what particular the definition is wrong; or in what way it could possibly mislead the jury. We think it was proper for the court to instruct as to the different degrees of assault, and it was not necessary for the court to charge the jury that they must find a specific intent to assault Harvey King.

The statute in force in the Indian Territory at the time this case was tried defined assault (section 905, Ind. T. Ann. St. 1899; Mansf. Dig. § 1562) as follows:

"An assault is an unlawful attempt, coupled with present ability to commit a violent injury upon the person of another."

We think the instruction complained of was not substantially different in its definition from the statute.

Assault is defined by Wharton in his work on Criminal Law ([10th Ed.] section 603) as follows: "Assault is an apparent attempt by violence to do corporal hurt to another." The same author at section 608 says: "Reckless shooting into a crowd is an assault, and an assault on several indiscriminately is an assault on each individual."

The fifth reason urged is that the court in its instructions read to the jury section 1800, Mansf. Dig. (Ind. T. Ann. St. 1899, § 1143), which is, in part, as follows:

"If any person shall wilfully or maliciously disturb, either by day or night, the peace and quiet of any town, village, neighborhood or family by loud or unusual noise, or by abusive, violent, obscene or profane language, whether addressed to the party so disturbed or some other person, or by threatening to fight, quarreling or challenging to fight, or fighting, or shooting off any fire-arms, or brandishing the same, or by running any horse at unusual speed along any street * * * he shall be deemed guilty of a misdemeanor," etc.

Counsel for defendant complain that this instruction was calculated to mislead the jury for the reason that there was evidence to the effect that the defendant had ridden out of town at a rapid rate of speed, and that he had discharged a revolver at or about the time he was passing the premises where the boy was shot, and insists that it was error because the defendant was not on trial for disturbing the peace, and that discharging a pistol is not an element of an assault with intent to kill. We cannot agree with counsel upon this proposition. The defendant violated this section of the statutes if he was running his horse by the premises at an unusual speed and shooting off his pistol, and if the jury found that he was guilty of such conduct, and while engaged in that conduct he shot the boy, Harvey King, they were authorized in finding him guilty of assault with intent to kill.

The sixth reason assigned is that the court erred in the following instruction:

"The shooting of a human being by or with a dangerous weapon in any case except in necessary self-defense or in defense of habitation, person, or property against one who manifestly intends or endeavors by violence or surprise to commit a known felony, or where the shooting of such person is excusable by misadventure, where the person doing the shooting is doing a lawful act without any intention of shooting the person and yet unfortunately does so, is in the Indian Territory an assault with intent to kill or maim the person so assaulted.

"Or it is an aggravated assault under the definition of the statute."

This instruction, in effect, tells the jury that the shooting of a human being with a dangerous weapon in the Indian Territory constitutes assault with intent to kill or an aggravated assault on the person so assaulted, except in the following cases: (a) In necessary self-defense; (b) in defense of habitation, person, or property against one who manifestly intends or endeavors by violence or surprise to commit a known felony; or (c) where the person doing the shooting is engaged in a lawful act, without any intention of shooting the person assaulted, but from lack of proper caution does so.

The court uses the word "aggravated" assault in the last sentence of the instruction, referring to assault with a deadly weapon as defined in section 1566, Mansf. Dig. (Ind. T. Ann. St. § 909). The offense under this section is commonly referred to by the courts and members of the bar as aggravated assault to distinguish this offense from the other degrees of assault. The defendant could not have been injured by this instruction.

The seventh and last reason urged by defendant appears in the brief of counsel for defendant in the following language:

"The plaintiff in error further contends that the court over his objections permitted Rock Flannigan, Dr. Wilkerson, Clarence King, William Twishell, Hugh Richardson, and Ples Thompson to testify to certain statements made by the plaintiff in error after he had been arrested which were incompetent and tended to prejudice the plaintiff's rights before the jury."

Nowhere in the brief do counsel point out to this court how this evidence of these witnesses injured the defendant. We have carefully examined the bill of exceptions, and the testimony of these witnesses was directed principally to statements made by the defendant after he had been arrested and to some of the witnesses while he was in the custody of the officers. There is no contention on the part of the defendant that these statements were made under duress, or that any inducement was held out to him.

The testimony of the several witnesses is to the effect that, when he was arrested, he inquired of the persons making the arrest as to why he was wanted. They explained to him that in "shooting up the town" he had shot a boy, and stated to him where the boy was at the time he was shot. The defendant replied, in substance, that he was at a loss to know how he could have shot the boy when he fired three shots in the opposite direction. This evidence was competent, and the court did not err in admitting it over the objection of the defendant.

The judgment of the trial court will be affirmed.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.