## JESS CARR v. STATE.

No. A-3768.    Opinion Filed Aug. 19, 1922.
(208 Pac. 275.)

(Syllabus.)

1. Appeal and Error—Conviction on Conflicting Testimony. A conviction based on conflicting testimony will not be disturbed on appeal, where there is credible evidence sufficient to sustain the verdict and judgment.

2. Evidence—Admissibility of Confessions Where Defendant Was in Jail and not Warned. The fact that the defendant was under arrest and in jail, and was not warned that any statement made by him might be used against him, will not affect the admissibility of any voluntary statement made by him, which would otherwise be competent.

Appeal from District Court, Muskogee County; Chas. G. Watts, Judge.

Jess Carr was convicted of grand larceny, and he appeals. Affirmed.

Ed. K. Brook, for plaintiff in error.

Geo. F. Short, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

MATSON, J. This is an appeal from the district court of Muskogee county wherein Jess Carr was convicted in November, 1919, of the crime of grand larceny and sentenced to serve a term of three years in the penitentiary.

Carr was jointly charged with one Butler Regan by information filed in the district court of Muskogee county on September 15, 1919, of the larceny of a 500-foot piece of manila cable drilling rope of the value of $600, the property of the Robinson Oil Company, alleged to have occurred on or about the 3d day of July, 1919.

According to the state's evidence, the Robinson Oil Company was drilling an oil well on land located about eight miles southwest of the city of Muskogee, in Muskogee county, and the rope alleged to have been stolen was taken from such premises, and was being used as part of the equipment in drilling the well.

One of the defendants, Regan, was living and working on a farm not far from where this well was being drilled, and Carr was visiting with Regan at that time, and together they stole this rope on the evening of July 2, 1919, and took it into the city of Muskogee, and there attempted to sell it to a junk dealer early in the morning of July 3d. Their actions impressed the junk dealer that something was wrong, and he called up the police, and two policemen were detailed to go to the junkyard immediately. These policemen found Carr in the act of trying to sell this rope to the junk dealer, and Regan was at that time on the wagon in which the rope had been hauled to the city. Carr was arrested, and immediately taken into the police station, where he made a confession of guilt, and took the officers to the place where the rope had been stolen. Regan was not arrested at that time, but was told to go to the police station, but instead of doing so he went back to his home in the country, where he was later arrested. Regan pleaded guilty, and appeared as a witness for the state against his codefendant Carr.

Carr denied having anything to do with the larceny of the rope, but testified that on the night of July 2d, and up

until 4 o'clock of the morning of the 3d of July, he attended a dance at a residence about six miles northeast of the city of Muskogee. He produced a young lady and young gentleman who testified that they were present at this dance, and that Carr was there; the young lady testifying that Carr took her to the dance. Carr admitted being with Regan on the morning of the 3d at the junkyard, and, in an effort to explain his connection with the stolen property, claimed that he had first met Regan in the city of Muskogee, and that Regan asked him to go with him to the junkyard to help him sell the rope; that his connection with the sale of the rope was altogether a friendly act for Regan, and that he did not know that the rope had been stolen.

It is contended that the evidence is insufficient to sustain the conviction. On the contrary, the evidence on the part of the state clearly establishes the guilt of this defendant. The jury evidently rejected as untrue the testimony of the defendant and his witnesses to the alleged alibi. Such was the jury's province, and it has never been the policy of this court to disturb a conviction based upon conflicting testimony where there is apparently credible evidence sufficient to sustain the verdict and judgment.

The next alleged error assigned as grounds for reversal is that the trial court permitted the witness Hughes to testify to a confession made by the defendant "without warning the said defendant that what he might say would be used against him." The record discloses, in connection with this assignment of error, that without objection the witness Hughes was permitted to testify to an alleged confession of guilt made by the defendant, which was a voluntary statement on defendant's part. After this testimony had gone to the jury the following proceedings were had:

"A. I talked to him at that time and later when I called for him again, when I talked to him the second time he made

the statement. Q. Was this—was he under arrest when he was brought in your presence there? A. Yes, sir; he was.

"Q. Was this statement a voluntary statement to you? A. Absolutely it was. Q. That is all.

"By Mr. Gavin: If the court please, may I ask a question—Mr. Hughes, when this defendant was brought into your office under arrest, did he make any statement—did you make any statement to him of the fact that any statement he might make could be used for or against him? A. In the first conversation I talked to him—

"Q. You may answer that question. A. No, sir; he wasn't Mr. Gavin.

"By Mr. Gavin: I move the court now to strike from the record all the alleged statements that this witness made, as no alleged confession made by this defendant.

"By the Court: Overruled.

"By Mr. Gavin: We except.

"By the Court: Stand aside."

In the case of Mays v. State, 19 Okla. Cr. 102, 197 Pac. 1064, it is held:

"The fact that the defendant was under arrest and in jail, and was not warned that any statement made by him might be used against him, will not affect the admissibility of any voluntary statement made by him, which would otherwise be competent."

See, also, Anderson v. State, 8 Okla. Cr. 90, 126 Pac. 840, Ann. Cas. 1914C, 314.

From the foregoing opinions it is evident that the fact that the defendant was under arrest and in jail, and was not warned that any statement made by him might be used against him, did not affect the admissibility of the confession, provided the same was otherwise competent. As no other objection is urged against the confession, and as the

record clearly indicates that the confession was voluntary, we find no merit in this assignment of error.

Finding no reversible error in the record, the judgment is affirmed.

DOYLE, P. J., and BESSEY, J., concur.