## TED HARDIN v. STATE.

No. A-9350. Dec. 2, 1938.
(85 P. 2d 332.)

H. G. E. Beauchamp, of Siloam Springs, Ark., for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   Ted Hardin, the defendant, was by information charged jointly with Marvin Ward and Tom Carrick, with robbery; was tried separately, convicted and sentenced to serve a term of five years in the state penitentiary.   Motion for a new trial was filed, considered, overruled and exceptions duly saved.

The substance of the testimony on behalf of the state shows that A. G. Lamb was running a store near the town of Salina, in Mayes county, Okla., on December 6, 1935.   While John Phillips was at the store with A. G. Lamb one night two parties came into the store and robbed Lamb of some money and a pistol.   Neither the prosecuting witness nor John Phillips could recognize the defendant as being one of the parties that took part in the robbery.   A car was seen near the scene of the robbery after the parties left the store, and before John Phillips and A. G. Lamb got themselves released where the robbers had tied them, the car was driven away.

One witness testified he was going hunting and saw the back of the car and described it as being a straight back and having a double bumper on it. The defendant was not seen by anyone in the neighborhood of where the robbery is alleged to have taken place. At the time of the reported robbery, the defendant lived near what is spoken of in the evidence as Little Kansas. All of the evidence against the defendant, Ted Hardin, is circumstantial.

Mrs. Bessie Templin, who was running a store at Little Kansas, or Twin Oaks, testified about 5 o'clock on the evening of December 6, 1935, Marvin Ward, Tom Carrick and the defendant were at her place of business, and Marvin Ward bought five gallons of gas; they were in Marvin Ward's car and were traveling west, going in the direction of Salina. The state's testimony shows that from the place where it is alleged Marvin Ward bought the gasoline to Salina, where Lamb and Phillips were robbed, is something like 25 or 30 miles.

About the 22nd or 23rd of December, 1935, after the robbery is alleged to have taken place on December 6, 1935, the defendant pawned to Mrs. Bessie Templin a pistol which was afterwards identified as being the pistol taken from the Lamb store the night of the robbery. The defendant was then living in a building belonging to Mrs. Templin, having moved into this building on the 4th of December, 1935, two days prior to the date of the robbery, and had something to do with running or managing the store at Little Kansas.

The testimony further shows that the defendant had moved from a place two or three miles away from the store building to the place belonging to the witness Bessie Templin, on the 4th day of December, 1935. After the pistol was found in the possession of Mrs. Templin, the party who claimed to have seen the car near the scene of the robbery at the Lamb store was driven over

to Little Kansas, or where Marvin Ward lived, and inspected the Marvin Ward car, and claimed the back of the car and rear bumpers of the car that drove away from near the Lamb store, near Salina, were similar to Marvin Ward's car. The witness describing the car did not recognize any of the parties in the car, about the car, or in the store.

It is undisputed that Marvin Ward owned a Dodge 1926 business sedan, as the party who had previously owned it testified he sold the car to Marvin Ward. The state's witnesses admitted there were many other Dodge sedans of the type of Marvin Ward's car.

The foregoing is the substance of the state's testimony.

The defendant testifying in his own behalf denied he had anything to do with the robbery, or that he was in Mayes county on the 6th of December, 1935; that he had lived at Little Kansas for some time, leaving there in February, 1936, and moving to Fort Gibson. At the time he left Little Kansas he was living in Mrs. Bessie Templin's house; that he had moved there from the Sixkiller place; Mrs. Sixkiller was a sister of Mrs. Bud Snell, and was a full-blood Cherokee Indian. The defendant denies he had anything to do with Tom Carrick and Marvin Ward, or that he drove with them away from his home on the afternoon or evening of the 6th of December, 1935; and then testified that on the evening of the 6th of December, 1935, he and his wife went back to the place they moved from and got some chickens and brought them home; that on the way home they saw Bud Snell, who lives between the place from which they moved and the place where they were living when they went for the chickens. The defendant describes in detail the route he and his wife traveled to the place where they lived, and as they came home they came by Bud Snell's.

Bud Snell corroborated the defendant and his wife about going to their former home on the afternoon or evening of the 6th of December, 1935, and their returning toward the place where they lived carrying chickens. Ausley Snell and Avery Foreman both testify they saw the defendant and his wife on the evening of December 6th, 1935, carrying chickens to their home where they were living.

The defendant and others testify he pawned the pistol to Mrs. Bessie Templin on the 22d or 23d of December, 1935, just a day or two before Christmas. Tom Carrick testified he knew Ted Hardin on the 22d of December, 1935; he went to defendant's home in company with Ausley Snell early in the morning; somebody had reported an Indian had been drunk down on the road or trail a short distance from Ted Hardin, and it was reported the Indian had lost some money and that he, Ausley Snell, and Ted Hardin went down to look for the money; while down looking for the money Carrick says he showed Ted Hardin a pistol and told him he wanted to pawn it for $5. The defendant said he did not have the money, and Carrick asked him if he could get the money from Mrs. Bessie Templin, and the defendant went and pawned the pistol for $5, and came back and gave the money to him. Carrick says he and Ausley Snell stayed with the defendant until after breakfast and then started home; Carrick stated he worked in a barber shop in Kansas, Okla., and so far as he knew the defendant had never seen the pistol before the morning he asked him to let him have the $5 and take the pistol for security.

Ausley Snell corroborated Carrick as to going to the defendant's home the morning the pistol was pawned to Mrs. Templin. There is no dispute that the pistol was owned by Lamb, the prosecuting witness.

The witness Mrs. Bessie Templin says the defendant told her he wanted to pawn the pistol for $5 but he did not want her to sell it; he would not take $20 for it, or words to that effect. Mrs. Templin lived near the defendant. Marvin Ward lived in the same neighborhood of the Templin store where the defendant lived. Carrick, according to the testimony, lived at Kansas, a few miles away.

The wife of the defendant corroborated his statement as to their returning to the place where they had been living on the evening of the 6th of December, 1935, and getting their chickens and carrying them home. Bud Snell corroborated her as to their going by his home. The defendant going into detail as to his movements from the 4th up to the 6th, and positively denying he ever saw the pistol until Tom Carrick showed it to him the morning it was pawned to Mrs. Templin. The defendant denies he drove away from Bessie Templin's place of business the evening of December 6th, 1935, in company with Tom Carrick and Marvin Ward; and Carrick positively states the defendant was not with him.

The defendant in his assignment of errors alleges: (1) The court erred in overruling his demurrer to the evidence. (2) The court erred in overruling plaintiff's motion for an instructed verdict. (3) The court erred in overruling the plaintiff in error's objection to certain evidence introduced on the part of the defendant and refusing to instruct the jury to disregard such evidence. (4) The court erred in ruling out certain evidence attempted to be introduced by the plaintiff in error; and the court erred in overruling defendant's motion for a new trial.

In this case it is clearly shown that the defendant lived in the same neighborhood or near Tom Carrick, Marvin Ward, Ausley Snell and Mrs. Bessie Templin. The record also shows that some time in the early part

of 1936, Mrs. Templin and the defendant had some kind of a controversy over some feed Mrs. Templin claims she missed from the adjoining room in which the defendant and his wife were living, which the officers investigated to see if they could locate who had removed and disposed of it.

Up until this time Mrs. Templin had continued to keep the pistol that had been pawned to her by the defendant, and he had not asked her for its return nor had she said anything to anyone about having the pistol until after the controversy with the defendant and his wife, in which controversy Mrs. Templin and her friend, Frank Hurley, were parties. Frank Hurley had at one time owned and operated the store, and as shown by the record Marvin Ward at one time worked for Mrs. Templin.

The errors alleged to have been committed by the trial court are included in the motion for a new trial, and they will all be considered together. The attorney general in his brief for the state insists and argues that the defendant was accorded a fair and impartial trial; that the evidence is sufficient to sustain a conviction; the court correctly advised the jury as to the law.

Section 3062, O.S. 1931, 22 Okla. St. Ann. § 834, in part reads as follows:

"On the trial of an indictment or information, questions of law are to be decided by the court, and questions of fact are to be decided by the jury."

The plaintiff in error in his argument insists that the evidence in this case is insufficient to sustain the verdict and judgment. In presenting his argument he analyzes the evidence of the state, which in brief as pertains to the defendant discloses that one witness claimed she saw the defendant in company with Tom Carrick and Marvin Ward at her place of business about 25 or 30 miles from

where the robbery took place, about five o'clock in the afternoon, or later; that Marvin Ward bought some gasoline and the witness claims the defendant left with Carrick and Ward, going in a westerly direction.

The only circumstances upon which the state relies to convict the defendant are the circumstances that on the 22d or 23d of December, 1935, after the robbery is alleged to have taken place on December 6th, 1935, the defendant pawned a pistol that was taken from the Lamb store to Mrs. Bessie Templin, the witness who testified to seeing the defendant leave her place with Tom Carrick and Marvin Ward the afternoon or evening of December 6th, 1935.

The defendant insists that these circumstances are not sufficient to sustain the conviction for the reason that he was not with Tom Carrick and Marvin Ward the night of the robbery, but shows by the evidence of Tom Carrick, Bud Snell, Ausley Snell and Avery Foreman that he was not with Carrick; that Bud Snell, Ausley Snell, the defendant's wife and Avery Foreman all testify to the whereabouts of the defendant in company with his wife during the late afternoon and evening of the 6th, up to and after midnight of that date.

The state, in order to sustain its position, cites Browning v. State, 31 Okla. Cr. 373, 239 P. 272, wherein the court in the second paragraph of the syllabus said:

"Where there is evidence from which the jury would reasonably and logically find the defendant guilty of the crime charged, in the absence of unusual circumstances, this court will not set aside the jury's verdict on account of insufficiency of the evidence."

And cites several other cases to support his contention. In the authorities cited by the Attorney General it has been the universal holding of this court that if there is sufficient testimony to warrant the court in submitting the case to the jury, even though the testimony was con-

flicting, this court would not disturb the verdict. Carr v. State, 21 Okla. Cr. 377, 208 P. 275; Pickett v. State, 35 Okla. Cr. 60, 248 P. 352; Humberd v. State, 56 Okla. Cr. 23, 32 P. 2d 954; Clemmer v. State, 56 Okla. Cr. 354, 40 P. 2d 37; Houston v. State, 63 Okla. Cr. 49, 72 P. 2d 526; Goodnight v. State, 62 Okla. Cr. 382, 71 P. 2d 789, and Joe Kizer v. State, 65 Okla. Cr. 247, 85 P. 2d 330.

The jury by its action in returning a verdict of guilty found the proof attempting to establish an alibi for the defendant was insufficient.

The record has been carefully read and studied, and we hold the court correctly advised the jury as to the law of circumstantial evidence and the facts; that the defendant was accorded a fair and impartial trial. The evidence is sufficient to sustain the judgment. The case is affirmed.

DOYLE and BAREFOOT, JJ., concur.